## MARTIN *v.* COPE.

June, 1863.

A contract for sale of a " carding machine and fulling mill," and " all the fixtures belonging to the fulling mill and carding machine," should not

---

be construed as including as fixtures those only which were annexed to the building at the time of sale; but may, by the aid of extrinsic evidence, be construed as including machinery which had been detached and removed without supplying its place.

The rule requiring minutes of testimony given on a former trial by a witness since deceased, to present not his meaning, merely, but his language, in order to be admissible to be read on a subsequent trial, does not require the precise words, but substantially the language.[*]

Joseph Sibley (for whom, on his decease, Robert Martin and Jane Sibley, administrators, were substituted as plaintiffs) sued David Cope for alleged conversion of a carding machine.

At the second trial, Judge BUCHAN, county judge in 1845, before whom a previous trial had been had, was called as a witness to state what testimony had then been given by one Bristol, a witness, since deceased. Judge BUCHAN said, "I can, by looking at my minutes, state what the testimony of Bristol was; I have a general recollection of his testimony; I recollect the point to which his testimony was directed. I took, at the time, careful minutes of his testimony. I think the notes of

the possibility of such an interest arising. In the litigation that ensued, the supreme court held the sale ineffectual for this reason; and the plaintiff then abandoned the proceedings, and brought partition, which was effectual.

The principal part of the plaintiff's claim in the present action, was for costs in the nugatory proceedings under the statute.

*The superior court* held, that the evidence on the trial showed a personal retainer by defendant, which rendered him personally liable, although his only interest was in his capacity as executor and trustee; and were also of opinion that the supreme court were wrong in their construction of the statute, and the plaintiff, therefore, was not chargeable with negligence.

From judgment for plaintiff (reported in 2 *Robt.* 385; S. C., less fully, 27 *How. Pr.* 212), defendant appealed.

*Elbridge T. Gerry*, for defendant, appellant.

*John H. Reynolds*, for plaintiff, respondent.

WOODRUFF, J.—In Godfrey v. Dalton, 6 *Bing.* 460; 4 *M. & P.* 149, in

* See also Halsey v. Sinsebaugh, 15 *N. Y.* 485; McIntyre v. N. Y. Central R. R. Co., 37 *Id.* 287; and Graham v. Chrystal, vol. 2 of this series.

the testimony taken by me on that occasion are correct, and contain substantially the language used by the witness." On cross-examination Judge BUCHAN said he sometimes took Bristol's words and sometimes used his own words to express Bristol's ideas. Under exception the judge was allowed to read his minutes.

The main question on the merits was, whether Sibley, by a contract of sale of his farm to defendant, "together with all the fixtures belonging to the fulling mill and carding machine," passed the title to a carding machine, &c., which, previous to the sale, had been taken out of the building on the farm used and known as "the carding machine" or "fulling mill," and had been stored in another building.

*The supreme court* held, that if the machine had been permanently removed from the building on an abandonment of the business, the contract of sale could not, as matter of construction, be held to include it. Under this instruction the

---

the English court of common pleas, TINDAL, Chief Justice, says: "It would be extremely difficult to define the exact limit by which the skill and diligence which an attorney undertakes to furnish in the conduct of a case is bounded; or, to trace precisely the dividing line between that reasonable skill and diligence which appears to satisfy his undertaking, and that *crassa negligentia*, or *lata culpa*, mentioned in some of the cases, for which he is undoubtedly responsible.

The cases, however, which have been cited and commented upon at the bar, appear to establish in general that he is liable for the consequences of ignorance or non-observance of care in the preparation of the cause for trial; or of attendance thereon with his witnesses; and for the mismanagement of so much of the conduct of the cause as is usually and ordinarily allotted to his department of the profession; whilst, on the other hand, he is not liable for error in judgment upon points of new occurrence, or of nice or doubtful construction, or of such as are usually intrusted to men in the higher branch of the profession of the law."

In the application of these views the court held, that the attorney was not responsible for neglecting to produce a judgment record as evidence of a previous judgment by default on the trial of a cause, from an erroneous conception or belief that the book of the prothonotary, in which was kept an entry of the judgments by default, signed in each term, was competent evidence to establish the fact. And in Kemp *v.* Burt, 4 *Barn. & Ald.* 424; S. C., 1 *Nev. & M.* 262, attorneys were held

Martin v. Cope.

jury had found for plaintiff at the trial, and the court held the instruction to be correct, although they were of opinion that the rule would have been otherwise if the removal had been

not liable in a case where there was doubt whether the course they pursued was not correct; and the plain inference from the language of the court is, that to subject them to an action, they must have been guilty of gross negligence.

In Lanphire v. Phipos, 8 *Carr. & P.* 475, at *nisi prius*, TINDAL, Chief Justice, instructed the jury in some general rules applicable to professional men in general, thus: "What you will have to say is this,— whether you are satisfied that the injury sustained (by the plaintiff) is attributable to the want of a reasonable and proper degree of care and skill in the defendant's treatment. Every person who enters into a learned profession undertakes to bring to the exercise of it a reasonable and proper degree of care and skill. He does not undertake, if he is an attorney, that at all events you shall gain your cause, nor does a surgeon undertake that he will perform a cure; nor does he undertake to use the highest possible degree of skill. There may be persons who have a higher education and greater advantages than he has; but he undertakes to bring a fair, reasonable, and competent degree of skill," &c.

In actions brought by the attorney to recover the value of his services, another element has been brought into view. Thus, in Montriow v. Jefferys, 2 *Carr. & P.* 113; S. C., *R. & M.* 317, also at *nisi prius*, ABBOTT, Ch. J., instructed the jury, where there was some evidence that the facts and the law applicable thereto were known to the attorney, and yet the proper steps for his client's protection in a proceeding before two county magistrates were not taken: " The real question upon this evidence is, whether you think that the expense was brought upon the parties by the *inadvertence* of the plaintiff. No attorney is bound to know all the law. God forbid that it should be imagined that an attorney, or a counsel, or even a judge, is bound to know all the law; or that an attorney is to lose his fair recompense on account of an error, being such an error as a cautious man might fall into. But if you think in this case, that the plaintiff has brought all the expense on the parties by his omitting to give proper information, either to them or to the justices, you will, under that impression, find your verdict for the defendant."

In several cases cited in notes to this case (in 12 *Eng. Com. Law*, 52), the proposition is recognized that, in an action for the value of the services of an attorney, if it be shown that by reason of the plaintiff's negligence the services have been of no value to his client, he can recover nothing. Some general expressions might easily be supposed to import the broader proposition, that wherever the service has been of no value to the client, there can be no recovery; but it is clear, I think, that no such broad proposition is held or intended; the observation of Chief Justice ABBOTT forbids any such idea.

temporary, with intent to replace the machine and operate it in the building.

Defendant moved, on exceptions, for a new trial, which was denied, and judgment affirmed.

---

In Hill v. Featherstonhaugh, 7 *Bing.* 569; S. C., 5 *M. & P.* 541, the attorney had been employed to secure his client by preventing a transfer of a bank stock, and to that end put a *distringas* upon the stock. There was some evidence that a previous *distringas* had been issued; in consequence, the second *distringas*, issued by the attorney, was unnecessary for the client's security. It was left to the jury to consider whether the work done was of any use to the defendant, and whether they could infer (from the evidence), that the plaintiff knew of a previous *distringas*, and had advised a second. On the review, Chief Justice TINDAL says: "I have always thought that if an attorney, *through inadvertence* or *inexperience*, incurs trouble which is useless to his client, he cannot make it the subject of remuneration, the meaning of which is, a reward for useful labor," &c. "It seemed clear to me that the plaintiff had acted with full knowledge of the former *distringas*, and I left it to the jury to say, whether they would infer that the plaintiff had advised the second *distringas*, and *was aware* of the first; and then comes the question, whether the second *distringas* was of any use, &c.; it was for the jury to say whether it was useless to the defendant, and *whether the plaintiff knew it to be so*, when it appeared by the correspondence that he had seen the solicitor of the bank before he proceeded."

GASELY says, a client is entitled to expect the exercise of competent skill; the attorney has not an unlimited discretion, and is not to pursue a course which will be manifestly useless to his employer. The question here was, whether the business done was necessary for accomplishing the object which the defendant had in view when he retained the plaintiff. The other judges state the question to be simply whether what was done was necessary for the object the employer had in view. But, I think it manifest upon the whole case, that this narrowing of the question was upon the clear assumption, that, if the work done was useless, the attorney must have known it to be so.

The language cited from BAYLEY, J., in Duncan v. Blundell, 3 *Stark. N. P.* 6, that "where a person is employed in a work of skill, the employer buys both his labor and his judgment; he ought not to undertake the work if it cannot succeed; and he *should know* whether it will or not," is far too harsh to be true without qualification. It would make an attorney the guarantor of success in every prosecution he advises and undertakes, and in every defense which by his advice is interposed; no such rule could be endured by a profession in which one or other of the parties to every litigation must fail. And the illustration of ALDERSON, J., in the case above cited (Hill v. Featherstonhaugh), better states the

*G. G. Munger*, for defendant, appellant;—Insisted that the words of the deceased witness must be given, not their substance or effect. Pyke *v.* Crouch, 1 *Ld. Raym.* 730; Rex *v.* Joliffe, 4 *T. R.* 285, 290; Doncaster *v.* Day, 3 *Taunt.* 262; Wilbur *v.*

---

extent of the rule acted upon: "In the case of a medical man, if an operation *which might have* been useful, has merely failed in the event, he is nevertheless entitled to charge; but if it could have been useful in *no event,* he would have no claim on the patient."

The decision in the last case was again reiterated in a case in which the court deemed the verdict against the weight of evidence, but in which they were, on the review, confined to the mere inquiry whether the jury were properly instructed (Shaw *v.* Arden, 9 *Bing.* 287; S. C., 2 *M. & Scott,* 341), and the question is stated to have been "whether the work was necessary for the plaintiff (the client), or was entered on from the defendants' own zeal, and a view of making business for their own advantage; that it was useless to the plaintiff appears from the result; the result aione would not, indeed, be conclusive to show that it was improperly undertaken, but that was a question for the jury on which the evidence was conflicting."

And in Bracey *v.* Carter, 12 *Ad. & E.* 373; 40 *Eng. Com. Law,* 74, the rule deducible from these cases is found in the proposition that "if an attorney, conducting a suit, commits an act of negligence by which all the previous steps become useless in the result, he cannot recover for any part of the business done."

This collection and statement of the cases in England, most of which have been cited and relied upon by the counsel for the appellant, shows that they are no authority for the claim that the plaintiff is not entitled to compensation for his services on the mere ground that they produced no beneficial result.

The extent of the rule is that when the services for which compensation is claimed are useless to the client, by reason of the negligence or the want of proper skill in the attorney, then the latter is entitled to no compensation.

The question, therefore, recurs: did the case now before us disclose such negligence or want of skill? For it seems to me to be clear, that the fruitless endeavors to dispose of the real estate to which the services related, were of no value in fact to the defendant, or to those for whose benefit the proceedings were taken.

No testimony was given on the trial by any expert in the law, for the purpose of proving, as a fact in the case, that the plaintiff, in advising the proceedings, acted unskillfully, or that he did not in good faith exercise a fair judgment upon the question to which his advice was directed, or even that the opinion by which he was governed in the institution and carrying on of the proceeding was not correct.

Selden, 6 *Cow.* 162; Clark *v.* Vorce, 15 *Wend.* 193; Huff *v.* Bennett, 6 *N. Y.* 337; Commonwealth *v.* Richards, 18 *Pick.* 434; Warren *v.* Nichols, 6 *Metc.* 261. And as to the merits, cited James *v.* Bostwick, *Wright (O.)* 142; Lowber *v.* Le Roy, 2 *Sandf.* 202; Teaff *v.* Hewitt, 1 *Ohio St.* 511; Murdock *v.* Gifford, 18 *N. Y.* 28.

*Joseph A. Stull,* for plaintiffs, respondents.

BALCOM, J.—Joseph Sibley, now deceased, and the defendant,

The result, and the views of the court upon the law, were, therefore, the guide of the court, on the trial below, to a determination of the question.

The correctness of the advice given, and therefore the propriety and wisdom of the course pursued by the attorney for the accomplishment of his client's wishes, viz : a sale of the property, depended upon the construction of a will, and also upon the force and effect of a statute.

It had not been authoritatively decided, that a proceeding for the sale of infants' lands under the statute, would not be effectual to pass a perfect title, where the fee, vested in such infants, was liable to open and let in persons yet unborn. An opinion had been expressed in the court of last resort, that such a sale would be effectual to pass a good title to the purchaser; a counter opinion had also been expressed, but other of the judges had refused to express an opinion on the point.

It was a fair question for consideration and for the exercise of professional judgment. The analogy of the rule, in case of partition and sale under the jurisdiction and power of the court of chancery, was not remote or irrelevant. In my judgment, the brief used in the proceeding taken by the plaintiff, and found in the case before us, shows that the plaintiff's views could be and were sustained by fair argument upon the construction of the statute, its purpose and design ; and the analogy referred to, and the peculiar situation of the property itself, appealed strongly to the court to give to the statute such liberal construction as would tend to facilitate a sale, plainly demanded by the interest of the infants in being, and of any who might thereafter be born.

However clear I may be, that the proceeding was rightfully held, in the supreme court, ineffectual to pass to the purcheser a perfect title, I do not think that the question was so plain that to have thought otherwise, and to have acted on that opinion, was a failure to exercise that reasonable care and skill which the attorney is bound to exercise, within the cases above referred to. It is of some significance, and the members of the profession have a right so to regard it, that a difference of opinion on the point had already appeared in the highest court in the State, and the point was there left undecided.

entered into a contract, in writing, under seal, dated October 7, 1836, by which the former, for a sufficient consideration, agreed to sell to the latter, his house, farm, and premises, situated in the towns of Chili and Riga, containing about three hundred and forty acres or upwards, with the crops growing on the same; all the lumber for the house; all the tools belonging to the saw mill; all the apparatus belonging to the grist mill; *together with all the fixtures belonging to the fulling mill and carding machine,* together with every article attached to the freehold. Sibley subsequently gave a deed to the defendant for the property, subject to the contracts.

To hold that the plaintiff was proved wanting in reasonable professional skill, because he adopted and acted upon one side of the question thus left open, would be a most oppressive rule to the legal profession, and often require them, at the peril of actions for damages, or at least of loss of all compensation, to be wiser and more skillful than those whose duty it is to declare the law.

As to the question whether the defendant was personally liable for the services in question, the case was put to the jury under instructions highly favorable to the defendant, and they have in substance found that the defendant intended to be personally liable for the plaintiff's compensation, or, in other words, that he agreed to pay therefor. There was testimony in the cause from which that might reasonably be inferred. Indeed, an employment to render services, in general, involves the liability of the employer to make compensation, unless he shows on his part that the understanding or agreement was otherwise. It may, it is true, be inferred from the terms of the employment or known *authority* of the party to act for, and bind others to such payment.

There was no error in leaving the question to the jury, and, we have, therefore, no jurisdiction to review their finding.

Whatever I might conclude, upon the merits of the whole case, if I were sitting to try the action upon all the issues, I do not perceive that any error in law was committed for which the judgment should be reversed; it must, therefore, be affirmed.

DANIELS, J., also read an opinion for affirmance.

All the judges concurred in affirming the judgment.

Judgment affirmed, with costs.

Consult, also, Stokes *v.* Tremper, 2 *Kay & J.* 232; Long *v.* Orsi, 18 *C. B.* 610; 26 *L. J. C. P.* 127; Fletcher *v.* Winter, 3 *Fost. & F.* 138; see also, 2 *Id.* 642, 407

It is apparent from the language of the contract that it was not written by a lawyer, or any person acquainted with the law of fixtures. It was conceded on the trial that it was drawn by Josiah Howell, who, at the time, lived in the neighborhood of the property, but had since died. It was proved that a building on the farm, which had been used in the wool-carding and cloth-dressing business, was called and known, at the date of the contract, as the fulling mill *or* carding machine, or the fulling mill *and* carding machine. But the building had not been used for that business for several years prior to that date; and the carding machine itself had been taken from the building, before the contract was made, and stored in the third story of the grist mill on the farm. The judge charged the jury, in substance, that if before the contract was made there had been a permanent removal of the carding machine from the carding machine building, upon an abandonment thereof the carding business, the machine ceased to be a fixture, and became mere personal property, and did not pass to the defendant by the contract or deed. To which the defendant's counsel excepted.

The meaning of the contract cannot be satisfactorily ascertained without the aid of extrinsic evidence; and such evidence establishes, or at least strongly tends to establish, that the words, " fulling mill and carding machine," were used in the contract to designate the building in which the carding machine in question and the fulling mill had been situated and used; and that the former had been removed and stored in the grist mill upon the same farm, prior to the making of the contract; and by assuming that the words " fulling mill and carding machine," were employed to designate the building I have mentioned, the presumption is that the phrase " fixtures belonging to the fulling mill and carding machine," as used in the contract, means the carding machine itself and other machinery that had been used in the carding machine and fulling mill building, and belonging therein when in their proper place. This interpretation of the contract is the only one that is consistent with the conduct of the parties. For the defendant assumed to own the carding machine in the fore part of the year 1837 or 1838, and disposed of it in one of those years; and Sibley did not bring this suit until February, 1843. And it is

probable if Sibley had not intended to sell the carding machine itself to the defendant, it would have been expressly reserved in the contract, for the inference is quite cogent that Howell would have thought it necessary to reserve it expressly, to prevent it passing by the general language of the contract. It seems to me Sibley intended to sell, and the defendant intended to purchase, by the contract, not only the fulling mill and carding machine building, but all the machinery on the farm, which had been used in such building as fixtures; and that such machinery is what they meant by the words "fixtures belonging to the fulling mill and carding machine." In other words, they supposed they correctly described the machinery that was formerly attached to and used in such building, when they designated the same as fixtures *belonging* to the same. It is not improbable that the defendant contemplated putting the carding and fulling works into operation again, at the time he contracted for the premises, and regarded the machinery which had been detached from the building, as fixtures belonging to the same.

For these reasons I am of the opinion that that part of the charge of the judge, above mentioned, misled the jury, and that he should have submitted to the jury, upon the evidence, the question whether the words "carding machine and fulling mill," as used in the contract, do not mean the building on the farm in which the business of carding wool and dressing cloth had been carried on ; and if so, whether the phrase, "fixtures belonging to the fulling mill and carding machine," does not mean the carding machine in question, and other machinery that had been used in said building, though detached from it and housed, or stored, in some other place on the farm, at the date of the contract.

If these views are correct, the judgment of the supreme court should be reversed, and a new trial granted, in the action, costs to abide the event.

ROSEKRANS, J., delivered an opinion in which he came to the same conclusion.

EMOTT, J.—I have no difficulty in agreeing that Judge

BUCHAN was properly allowed to read his minutes of the testimony at the former trial. He stated that these minutes contained not substantially the meaning but substantially the language of the witness. The slight particulars of difference stated were wholly unimportant.

It is with considerable hesitation that I disagree to the ruling of the court below on the main question in the case. "All the fixtures belonging to the falling mill and carding machine," seem to me to include everything which has been a part of the machinery of this building, and which had not been removed and its place supplied by something else. It seems to me that the conveyance meant to include all which was essential to complete the machinery of these mills, whether then in use, or in the building or not, but not machinery which had been removed to give place to something else. The court below put the title solely upon the question of annexation at the time. I think this was an error; and on this ground I agree there should be a new trial.

I may add that I doubt whether the particular machine in question here was shown at all ever to have been attached to or a part of this building.

DENIO, Ch. J., and DAVIES, J., concurred in this opinion.

WRIGHT, J., read a dissenting opinion, in which MARVIN, J., concurred.

H. R. SELDEN, J., took no part.

Judgment reversed, and new trial ordered; costs to abide event.